IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2020 Session

## MONA WORD v. KNOX COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-66-17      William T. Ailor, Judge**

_____

### No. E2018-01843-COA-R3-CV
_____

This appeal arises from a lawsuit alleging racial discrimination in the workplace. Mona Word ("Word"), an African-American woman who worked in the Knox County Clerk's Office for 19 years, sued Knox County Clerk Foster D. Arnett, Jr. ("Arnett") in his individual and official capacity, Knox County, Tennessee ("Knox County"), and the Knox County Clerk's Office ("Defendants," collectively) asserting a number of claims, including violations of the Tennessee Human Rights Act ("the THRA"). According to Word, she was denied opportunities for promotion because of her race, and was singled out for discipline because of her race, as well. Defendants filed a motion for judgment on the pleadings, which the Circuit Court for Knox County ("the Trial Court") granted. Word appealed to this Court. Accepting Word's factual allegations as true as is required at the motion for judgment on the pleadings stage, we hold that Word alleged enough to withstand Defendants' motion with respect to certain of her claims against Knox County and Arnett in his individual capacity. However, we affirm the Trial Court's dismissal of Word's claims against Arnett in his official capacity and the Knox County Clerk's Office, as well as Word's claims for intentional and negligent infliction of emotional distress. The judgment of the Trial Court thus is affirmed, in part, and reversed, in part, and this cause is remanded for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which RICHARD H. DINKINS and JOHN W. MCCLARTY, JJ., joined.

George T. Underwood, Jr., Knoxville, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellant, Mona Word.

Houston S. Havasy and David M. Sanders, Deputy Law Directors, Knoxville, Tennessee, for the appellees, Foster D. Arnett, Jr., in his individual and official capacity, Knox County, Tennessee, and the Knox County Clerk's Office.

## OPINION

### Background

Word worked in the Knox County Clerk's Office from 1997 until her resignation in 2016. Arnett became Knox County Clerk in 2008. In October 2016, Word filed a complaint against Defendants in the Chancery Court for Knox County alleging that she was subjected to racial discrimination during her time at the Knox County Clerk's Office. Word alleged, in part:

> 12. Plaintiff Word on more than one occasion questioned why the Knox County Clerk's Office/Knox County, after Defendant Arnett took over the department, had a custom of hiring/appointing Caucasian supervisors/managers without posting and publicly advertising those positions thereby preventing her and other racial minorities from being able to apply for and be considered for those higher paying positions. When Plaintiff asked the Knox County Clerk Human Resources Director why that was so the HR Director told her those are just the "old practices" still being used.

> ***

> 16. The Knox County policy regarding hiring, promotions, transfers and reassignments in effect since 2004 provides:
> Knox County continually strives to promote employees and fill job vacancies on an equal opportunity basis. Promotions are based on an objective evaluation of each vacancy and the candidate involved. **Vacancies will be advertised** and, when possible Knox County will promote from within and will first consider employees with the necessary qualifications and skills.
> 17. Plaintiff Word had approximately fifteen years of experience in the business license division of the Knox County Clerk's office in her 19 year career there.
> 18. However, because the foregoing supervisory position vacancies in the Clerk's office business tax license division were never posted/advertised neither Plaintiff nor any other minorities had an equal

-2-

opportunity to apply for those higher paying supervisor/manager positions before those positions were filled.

19. Furthermore, the Defendants' disparate treatment discriminatory practice since 2008 of only promoting Caucasians into the top paying supervisory positions in the Clerk's office chilled Plaintiff and other minorities from applying for supervisory promotion in the Knox Clerk's office.

20. After Plaintiff Word again questioned and voiced her objections to the hiring and promotion practices of Defendant Foster Arnett and Knox County to the Human Resources Director on October 29, 2015 and also expressed her rejection of racist comments about Muslims posted on Defendant Arnett's Face Book page which were widely reported in the local news, Defendant Foster Arnett intimidated and maliciously harassed Plaintiff Word in a meeting with her a few days later on November 2, 2015 at 9:30 am.

21. Pat Sullivan [another Knox County employee] was also present in that meeting.

22. Defendant Foster Arnett, using his cellphone (upon information and belief issued or paid for by Knox County) audio recorded that intimidation meeting. He kept that audio recording and never provided Plaintiff a copy of it.

23. In that meeting, Supervisor Arnett (after mentioning Plaintiff Word's questioning his hiring and promotion practices) threatened Plaintiff Word that he had some "dirt" on her from four (4) years ago and told her, "which I could have fired you for". He further threatened to give to the newspaper and to a particular TV news station (which he identified and said he "had connections" with) copies of emails he told Ms. Word could be presented to embarrass her telling her, "it could be headlines". Defendant supervisor Foster Arnett added, "I could make it very embarrassing for your church family too".

24. That November 2, 2015 at 9:30 a.m. intimidation meeting followed other adverse employment action taken 3 days earlier against Plaintiff Word on October 28, 2015 when she was given a disciplinary verbal warning which was recorded in her personnel file and was imposed after the complaints she had made about racial discrimination and the hiring/promotion practices in the Knox County Clerk's office. The Defendants used as pretext that she was receiving that tangible adverse employment action because she had not been polite enough and had not included her name when she greeted Defendant Arnett as he (unbeknownst to Plaintiff) called into her department. Plaintiff had answered the in-house call in to the business license department: "Knox County Clerk's office"

-3-

instead of: "Good afternoon, Knox County Clerk's office this is Mona how may I help you".

25. However, that stated reasoning for disciplining Plaintiff was not the actual reason and motivation because one or more of the other Clerk office employees who were Caucasian had likewise (after Plaintiff had been disciplined), *not* answered the phone with the greeting Defendant told Plaintiff she had to use when Defendant Arnett was calling and was on the line; however disciplinary action was never taken against those employees. The actual motivation for disciplining Plaintiff Word was retaliation/discrimination.

26. The October 28, 2015 retaliation disciplinary verbal warning and the November 2, 2015 intimidation meeting were part of a continuing pattern following other tangible adverse employment action Defendant Arnett had taken against Plaintiff Word including a previous reassignment of her duties, demotion and reductions in Plaintiff's pay, twice.

27. Plaintiff Word alleges that the foregoing tangible employment actions by Defendant supervisor Arnett and Defendant Knox County against her as well as the failure to promote the African American Plaintiff or other employees of color into supervisory positions in the Knox County Clerk's office were motivated in whole or in part by racial bias and/or retaliation.

***

32. Within days of the November 2, 2015 intimidation meeting, Plaintiff Word additionally filed written charges against the Defendants in the Tennessee Human Rights Commission (THRC) with dual filing to the Equal Employment Opportunity Commission (EEOC).

33. Because Defendant Arnett had made Plaintiff's work environment hostile, over the ensuing months she considered and eventually accepted employment elsewhere and resigned her 19 years Knox County employment, thereafter.

34. Concerned that her Knox County benefits not be negatively impacted through further retaliation by Knox County; rightly or wrongly, Plaintiff worded her letter of resignation out of that fear.

(Emphases in original). Word alleged further that she suffered "insomnia, humiliation, embarrassment, severe emotional distress, depression, and other mental anguish because of Defendants' breaches of duty," as well as economic damage stemming from lack of equal opportunity. Having set forth her allegations, Word asserted the following eight claims:

-4-

## COUNT ONE

47. Defendant <u>Knox County violated the Tennessee Human Rights Act</u> and discriminated against the African American Plaintiff and other African Americans through <u>disparate impact race discrimination</u> and/or by creating an intimidating <u>hostile work environment</u> through supervisor Knox County Clerk Foster Arnett's harassing actions against Plaintiff because of her race, which included supervisor Arnett taking tangible adverse employment action against Plaintiff.

## COUNT TWO

48. Defendant <u>Knox County violated the Governmental Tort Liability Act</u> through its negligence in breaching its duty to follow and implement and not ignore its equal opportunity vacancy advertising policy so qualified African Americans as well as other races (both inside Knox County government and outside) can receive objective consideration of their qualifications before vacancies in the Knox County Clerk Office and in the Knox County government are filled.

## COUNT THREE

49. <u>Defendant Arnett violated the retaliation</u> common law and statutory law through his actions against the whistle blower Plaintiff Word including the November 2, 2015 intimidation and harassment with malice conduct causing her constructive discharge.

## COUNT FOUR

50. <u>Defendant Arnett intentionally and with malice discriminated against Plaintiff</u> Word because of her African American race in violation of the Tennessee Human Rights Act.

## COUNT FIVE

51. <u>Defendant Arnett intentionally engaged in outrageous conduct</u> exceeding the bounds of decency in civilized society against Plaintiff Word which caused her severe emotional distress.

## COUNT SIX

52. <u>Defendants Arnett & Knox County negligently caused Plaintiff Word severe emotional distress</u> through Arnett's outrageous conduct against her; for which all Defendants are jointly and severally liable.

## COUNT SEVEN

53. <u>Defendant Arnett was negligent</u> when he breached his duty to provide African Americans equal opportunity to apply for and be considered for staff and supervisory positions in the Knox County Clerk's office between 2008-2016. Those breaches of duty directly and proximately caused harm to Plaintiff Word making Defendant Arnett personally liable.

## COUNT EIGHT

54. <u>Defendant Knox County's</u> practice of allowing Departments to fill supervisory vacancies without posting and advertising those positions and thereby preventing African Americans from applying or being considered was pervasive in other Knox County Departments constituting <u>additional disparate impact racial discrimination</u> in violation of the Tennessee Human Rights Act.

(Emphases in original).

In January 2017, Defendants filed a motion to dismiss for lack of subject matter jurisdiction, arguing that jurisdiction under the Governmental Tort Liability Act ("the GTLA") lies in Circuit Court rather than Chancery Court. Word filed a motion to strike and a motion for default judgment on grounds that Defendants failed to file an answer to her complaint. In February 2017, Defendants filed answers denying any discriminatory conduct. Also that February, the Chancery Court for Knox County granted Defendants' motion to transfer the case to the Trial Court. Defendants thereafter filed amended answers.

In March 2018, Defendants filed a motion to dismiss. Therein, Defendants stated, in part:

> The majority, if not the entire action, is predicated on a purported requirement that Foster Arnett must advertise open job positions in his department. Taking the facts stated in the Complaint as true, that Mr. Arnett did not advertise the jobs, the action nevertheless fails. There is no requirement in Tennessee for government positions to be advertised.

Moreover, Foster Arnett has the ability to hire and fire employees, as Plaintiff aptly points out; such that, he is a highranking public official to constitute him as a policy maker. Thus, he could not violate a policy when his acts constitute policy.

Plaintiff lacks standing over much of her purported action inasmuch as she sues for discrimination of job positions for which she did not apply.

Foster Arnett is entitled to qualified immunity. By extension, under T.C.A. § 29-20-206, Knox County is entitled to qualified immunity — because Foster Arnett is immune.

Foster Arnett is entitled to dismissal because there is no individual liability under the THRA absent an aiding and abetting allegation. The Complaint makes no such allegation.

The official capacity suit against Foster Arnett must be dismissed as redundant.

The suit against "Knox County Clerk's Office" must be dismissed, because it is not a legal entity capable of being sued. Alternatively, it is a redundant action against Knox County.

Plaintiff failed to state a *prima facie* cause of action under the Tennessee Human Rights Act, so the action must be dismissed.

Many of Plaintiff's claims are barred by the statute of limitations. For all of these reasons, this action must be dismissed.

(Internal citation omitted). Defendants then filed, "out of an abundance of caution," a motion for judgment on the pleadings incorporating the whole of their motion to dismiss. In April 2018, Word filed a motion to strike Defendants' pleading and to compel discovery. In May 2018, Word filed a response to Defendants' motion for judgment on the pleadings. Word argued, in part, that the continuing violation doctrine—whereby THRA violations otherwise barred by the statute of limitations can relate to violations occurring within the statute of limitations—applied in her case.

In May 2018, the Trial Court conducted a hearing on all pending motions. In June 2018, the Trial Court entered an order disposing of the motions and dismissing Word's complaint. In its order, the Trial Court stated:

First, the Court heard arguments from Plaintiff's Counsel on motions that were filed in Chancery Court prior to the time this case was transferred to this Court. On January 19, 2017, Plaintiff moved for default against all parties in this action. The Court reviewed the motions and responses as well as heard the arguments of counsel and is of the opinion that Plaintiff's motions for default against all parties are not well taken. Therefore, the motions for default are DENIED.

Next, the Court heard the Defendants' Judgment on the Pleadings filed March 29, 2018. This motion was originally filed as a Motion to Dismiss on March 12, 2018, but then later adopted and incorporated into a Motion for Judgment on the Pleadings, as all Defendants had filed answers in this case. The Court reasoned that on a motion to dismiss and on a judgment on the pleadings, the Court accepts the facts in the Complaint as true, and views the motion in the light most favorable to Plaintiff.

Defendant Foster Arnett individually moved to dismiss for qualified immunity as well as the Plaintiff's failure to allege aiding and abetting under the Tennessee Human Rights Act. The Court is of the opinion that this motion should be GRANTED, as none of the allegations stated in the Complaint would rise to the level that would allow Mr. Arnett to be sued individually.

Defendant Foster Arnett in his official capacity and the Knox County Clerk's Office moved to dismiss for redundancy, as those claims are nothing more than redundant claims against Knox County. Furthermore, "Knox County Clerk's Office" does not exist as a legal entity separate and apart from Knox County, Tennessee. The Court is of the opinion that these motions should be GRANTED, and those allegations dismissed as well.

With regard to all Defendants' claims that the statute of limitations truncates Plaintiff's Complaint, and that the Continuing Violation Doctrine does not apply or toll her claims reaching back to the year of 2008, the Court is of the opinion that this motion should be GRANTED. Specifically, the Court is of the opinion that prior to this action, even if there were discriminatory action, the October 28, 2015 verbal warning and the meeting of November 2, 201[5] are categories of action that differ from the previously complained conduct reaching back to 2008. In other words, there was no nexus, within the meaning of the Continuing Violation Doctrine, between the disparate impact claims regarding not posting open jobs positions and the allegations of discrimination arising from the October 28 and November 2, 2015 claims. All matters complained of prior to October 27, 2015 are barred by the statute of limitations.

With regard to Defendants' claim that the constructive discharge, hostile work environment, and other allegations should be dismissed, the Court is of the opinion that this motion should be GRANTED.

> . . . the Court in reviewing the *Campbell versus Florida Steel Corporation*, Supreme Court ruling in that case, the Court of Appeals reversed the Trial Court's findings of constructive discharge and dismissed that action, concluding that neither

the Tennessee Human Rights Act nor the Federal Civil Rights Act required employers to secure a pleasant social environment.

That was a case where an employee had complained to their employer and the employer met with the offending other employees and told them that their actions were not proper, and at that point all of the employees probably gave a cold shoulder to Ms. Campbell.

\*\*\*

The Supreme Court went on to talk about a hostile work environment.

\*\*\*

In determining whether an environment is hostile, the Court must consider the totality of the circumstances. While no single factor is required or conclusive, considerations relevant to the determination include but are not limited to frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, whether it unreasonably interferes with the employee's work performance and employee's psychological wellbeing.

In this case, we have Foster Arnett who apparently posted some things on Facebook in his personal capacity that were directed toward Muslims. There is no allegation in the Complaint that this Plaintiff is Muslim, so it can't be construed that those remarks were directed toward her.

Then the conversation where Mr. Arnett gave a verbal warning on October 28, 2015, then again November 2, 2015, where he said he's got, I believe, dirt on you that would make it uncomfortable for you and your church family, in the Court's opinion, those are I'm sure offensive, but the Court cannot, from looking at the totality of things here, conclude that this Plaintiff was constructively discharged as the result of any of the actions that were taken.

-9-

Mr. Arnett didn't demote her at that time. He did not reduce her pay. He did not fire her. He did not take any actions other than give her these warnings and make statements that he made. As a result, the Court is of the opinion that the Defense's motions should be granted.

[Transcript of Memorandum Opinion pp. 4-6] For these and all the other reasons, the Court finds that the allegations of the Complaint should be dismissed against all parties.

Following entry of this order, an earlier-raised issue of whether attorney's fees would be awarded remained unaddressed. In February 2019, the Trial Court permitted Knox County to withdraw its motion for attorney's fees, and it denied Arnett's motion for attorney's fees. Word timely appealed to this Court.

## Discussion

We restate and consolidate the five issues Word raises on appeal into the following three dispositive issues: 1) whether the Trial Court erred in granting Defendants' motion for judgment on the pleadings with respect to Word's claims for violation of the THRA, hostile work environment, disparate treatment, retaliation, protected activity, and constructive discharge; 2) whether Arnett may be found liable in his individual capacity; and, 3) whether Word asserted a viable claim for intentional infliction of emotional distress against Arnett.

This case was resolved below on a motion for judgment on the pleadings. "[A] motion for judgment on the pleadings is 'in effect a motion to dismiss for failure to state a claim upon which relief can be granted.' " *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011) (citations omitted). Our Supreme Court has instructed:

In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). In addition, "[c]onclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *Id*.

*Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004). "We should uphold granting the motion only when it appears that the plaintiff can prove

-10-

no set of facts in support of a claim that will entitle him or her to relief." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). Our standard of review is *de novo* with no presumption of correctness as to the Trial Court's decision. *Id.*

We first address whether the Trial Court erred in granting Defendants' motion for judgment on the pleadings with respect to Word's claims for violation of the THRA, hostile work environment, disparate treatment, retaliation, protected activity, and constructive discharge. Under the THRA, it is a discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; . . ." Tenn. Code Ann. § 4-21-401(a)(1) (2015). As to a plaintiff's mode of recourse and time in which to act, Tenn. Code Ann. § 4-21-311 provides:

> (a) Any person injured by any act in violation of this chapter shall have a civil cause of action in chancery court or circuit court.
>
> ***
>
> (d) A civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases . . .

Tenn. Code Ann. § 4-21-311 (2015). Not all discriminatory conduct outside the statute of limitations period is necessarily barred from redress, as "[t]he continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006) (citing *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884, 889 (Tenn. 1996)).

Regarding hostile work environment, another of Word's claims, our Supreme Court has stated:

> [I]n order to prevail on a hostile work environment racial harassment claim, a plaintiff must prove (1) membership in a protected class; (2) racially motivated conduct that constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job; and (3) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

-11-

*Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31-32 (Tenn. 1996). Meanwhile, to establish constructive discharge, "an employee need only show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Id.* at 34. "A 'disparate treatment' case involves an employer who treats individuals from a protected group differently and less-favorably than other individuals." *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001).

To begin with, Word's complaint is not a model of clarity. Its timeline is confusing and jumbled. The allegations are not necessarily in chronological order. Nevertheless, a complaint need not be perfect in every detail to state viable claims. Our Supreme Court observed that "Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citations omitted). We bear in mind this liberal notice approach in our evaluation of Word's complaint in conjunction with the standard of review for motions for judgment on the pleadings which, like motions to dismiss, requires us to accept the factual allegations as true.

To recap, Word alleged that Knox County, through Arnett, violated its own policy by failing to advertise vacancies for supervisor/manager jobs. As a result, according to Word, she and other racial minorities were deprived of a fair chance to apply for and be considered for these higher paying positions. Word alleged that she inquired to human resources about Arnett's hiring practices and was told that these were just the "old practices." Word alleged that some time before October 28, 2015, she was reassigned, demoted, and had her pay reduced. On October 28, 2015, Arnett called the office and Word answered the phone with "Knox County Clerk's office" rather than Arnett's required "Good afternoon, Knox County Clerk's office this is Mona how may I help you." Word was verbally disciplined, and she alleges it was because of discrimination and/or retaliation. The next day, October 29, 2015, Word again spoke out to human resources against Knox County and Arnett's hiring and promotion practices, as well as certain Facebook comments against Muslims that Arnett allegedly had made. On November 2, 2015, Word had a meeting with Arnett. Word alleged that Arnett threatened in that meeting to release "dirt" on her to the media that would make "headlines" and embarrass her church family. Word resigned in 2016.

Accepting Word's factual allegations and all reasonable inferences drawn from those factual allegations as true, as we must at this stage, Word has sufficiently alleged that Knox County and Arnett were motivated by race in their hiring practices and in actions taken against Word. According to Word, she was disciplined and threatened

*because of her race* and *because she had protested racially discriminatory practices*. The racially-motivated policy, per Word's allegations, stretched back over the course of Arnett's tenure as Clerk. It is premature at this stage to exclude the possibility that the continuing violation doctrine may yet apply to preserve for consideration those discriminatory actions and practices that Word alleged took place outside the statute of limitations period. It is also premature to conclude that Word, given what she alleged, "can prove no set of facts in support of a claim that will entitle . . . her to relief." *Young*, 130 S.W.3d at 63. While Defendants argue that Word did not even apply for the positions at issue, that is unsurprising if the positions were not advertised as she alleged.

Whether Word will prove her allegations is another matter. We take no position on that as that is not the question before us. We hold only that, under the liberal notice pleading standard in Tennessee and the high burden for a movant on a motion for judgment on the pleadings or a motion to dismiss, Word has alleged enough to assert claims for violation of the THRA, hostile work environment, disparate treatment, retaliation, protected activity, and constructive discharge. We reverse the judgment of the Trial Court to the extent it dismissed these claims, and remand for further proceedings.

As a final matter on this issue, the Trial Court dismissed Word's complaint as it pertained to the entity "the Knox County Clerk's Office" on grounds that it is not an entity separate from Knox County capable of being sued, and also as it pertained to Word's claims against Arnett in his official capacity on grounds of redundancy. Word has raised no specific issue with regard to these two dismissed parties and we discern no error. We leave undisturbed the Trial Court's dismissal of claims against the Knox County Clerk's Office and Arnett in his official capacity.

We next address whether Arnett may be found liable in his individual capacity. Defendants argue that the answer is no for two reasons, the first being that Arnett was not Word's employer—Knox County was—and that an individual supervisor may be found liable under the THRA only if that supervisor is alleged to have aided or abetted discrimination, something Word did not allege specifically. Defendants argue also that Arnett is entitled to qualified immunity, a doctrine shielding governmental officials from civil damages or liability in the performance of discretionary functions when their actions do not violate clearly established constitutional or statutory rights a reasonable person would have known about. *Cantrell v. DeKalb County*, 78 S.W.3d 902, 906 (Tenn. Ct. App. 2001). Word argues in response that, at this stage of the case, she should be allowed discovery to contend with both arguments, and that it was premature for the Trial Court to dismiss her claims against Arnett in his individual capacity. Word argues also that Arnett was her employer for purposes of the THRA even though she identified Knox County as her employer in her complaint.

-13-

Under the THRA, an "employer" means "the state, or any political or civil subdivision thereof, and persons employing eight (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly." Tenn. Code Ann. § 4-21-102 (5)(2015). Before July 1, 2014, it was a discriminatory practice under the THRA for one or more persons to "[a]id, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter." Tenn. Code Ann. § 4-21-301(2). This language was eliminated effective July 1, 2014, with new language providing that "[n]o individual employee or agent of an employer shall be liable" for a violation of the THRA. Tenn. Code Ann. § 4-21-301(b) (2015). The new provision removing individual liability applies to "all actions accruing on or after the effective date of this act." 2014 Tenn. Pub. Acts Ch. 995, §§ 1, 8. Although Word filed her complaint in October 2016, two years after the amendment, she alleged that Arnett's discriminatory practices go all the way back to 2008 when he came into office. This being so, Word's claim began to accrue under the old version of the statute. Even if Arnett is not deemed to have been Word's employer, he could be found liable in his individual capacity if he were proven to have aided, abetted, incited, compelled or commanded a person to engage in a discriminatory act or practice. While Word's complaint did not track this particular language, she did allege that Arnett oversaw the creation and maintenance of a racially discriminatory hiring and promotion policy. It is, once again, premature at this stage to conclude that Word can prove no set of facts in support of her claim of Arnett's individual liability under the THRA.

With regard to whether Arnett is entitled to qualified immunity, we again turn to Word's allegations. According to Word, Arnett engaged in discrimination against her and other racial minorities. This naturally implicates constitutional and statutory rights. While Defendants are correct that qualified immunity may be raised early in a case, Word has alleged enough to overcome Defendants' assertion at this stage of qualified immunity for Arnett. This does not preclude that Arnett later may be found to have qualified immunity. We reverse the Trial Court's dismissal of Word's claims against Arnett in his individual capacity.

The third and final issue we address is whether Word stated a viable claim against Arnett for intentional infliction of emotional distress. There are three essential elements to a cause of action for intentional infliction of emotional distress or outrageous conduct: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). As discussed by the *Bain* Court, this is not an easy burden to meet. *Id.* According to *Bain*:

-14-

[T]his Court has adopted and applied the high threshold standard described in the Restatement (Second) of Torts as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Bain*, 936 S.W.2d at 622-23.

Defendants argue that "mere threats and insults are not cognizable for an IIED claim. . . ." Word argues in response, as she has elsewhere, that she should be allowed discovery to develop this claim.

Word certainly has alleged objectionable conduct on Arnett's part. She alleged that Arnett told her that he had "dirt" on her and that he could share this dirt with the media to make "headlines" and embarrass her church family. However, even accepting these factual allegations as true, they do not rise to the very high bar of "atrocious and utterly intolerable in a civilized community" necessary to sustain a claim for intentional infliction of emotional distress. *Id*. Furthermore, nothing Word alleged suggests that there is anything more outrageous to the episode that could be revealed through discovery. We, therefore, affirm the dismissal of Word's claim for intentional infliction of emotional distress. We note that Word, in her complaint, also asserted a claim of negligent infliction of emotional distress, but she has made no argument about it on appeal. We leave the Trial Court's dismissal of Word's claim for negligent infliction of emotional distress undisturbed, as well.

In summary, we reverse the Trial Court in its dismissal at this judgment on the pleadings stage of Word's claims for violation of the THRA, hostile work environment, disparate treatment, retaliation, protected activity, and constructive discharge. We further

-15-

reverse the Trial Court in its determination, again at this judgment on the pleadings stage, that Arnett may not face liability in his individual capacity. We affirm the Trial Court in its dismissal of the Knox County Clerk's Office and Arnett in his official capacity. We further affirm the dismissal of Word's claims for intentional and negligent infliction of emotional distress.

**Conclusion**

The judgment of the Trial Court is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee Knox County, Tennessee.

_____
D. MICHAEL SWINEY, CHIEF JUDGE